**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

**In re:**

                                               **CASE NO. 3:11-bk-08765-PMG**

**RICHARD HAISFIELD,**
**AUDREY L. HAISFIELD,**                                   **CHAPTER 11**

                      **Debtors.**

_____

**PLAN OF REORGANIZATION**
**<u>SUBMITTED BY RICHARD HAISFIELD AND AUDREY L. HAISFIELD</u>**

COUNSEL FOR DEBTORS

JIMMY D. PARRISH. ESQ.
BAKER & HOSTETLER LLP
200 S. ORANGE AVE.
SUNTRUST CENTER, SUITE 2300
ORLANDO, FLORIDA, 32801-3432

JUNE 14, 2012

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

In re:

RICHARD HAISFIELD,
AUDREY L. HAISFIELD,

            Debtors.

CASE NO. 3:11-bk-08765-PMG

CHAPTER 11

---

**PLAN OF REORGANIZATION**
**SUBMITTED BY RICHARD HAISFIELD AND AUDREY L. HAISFIELD**

      RICHARD HAISFIELD and AUDREY L. HAISFIELD (**"the Haisfields"** or **"Debtors"**), hereby propose the following plan of reorganization (the "Plan"), pursuant to Chapter 11 of the Code, 11 U.S.C. §101, *et seq.*

## ARTICLE I. - DEFINITIONS.

      For the purpose of the Plan, the following terms will have the meanings set forth below:

      **Administrative Claim** shall mean a Claim for payment of an administrative expense of a kind specified in Section 503(b) of the Code and of a kind referred to in Section 507(a)(1) of the Code, including without limitation, the actual, necessary costs, and expenses incurred. after the commencement of the Bankruptcy Case, of preserving Debtors' estate and operating the business of the Debtors, including wages, salaries or commissions for services, compensation for legal and other services and reimbursement of expenses awarded under Sections 330(a) or 331 of the Code and all fees and charges assessed against the Estate under Chapter 123 of Title 28, United States Code.

      **Administrative Claims Bar Date** shall mean the date by which all Administrative Claims must be filed with the Bankruptcy Court to be allowed. The Administrative Claims Bar

Date will be established by the Bankruptcy Court as a specific date prior to the Confirmation Date.

**Allowed Administrative Claim** shall mean all or that portion of any Administrative Claim, which has been or becomes allowed by Order of the Bankruptcy Court.

**Allowed Amount** shall mean the amount of an Allowed Claim.

**Allowed Claim** shall mean a Claim: (a) with respect to which a proof of claim has been filed with the Bankruptcy Court in accordance with the provisions of Section 501 of the Code and Rule 3001 and within any applicable period of limitation fixed by Rule 3003 or any notice or Order of the Bankruptcy Court; (b) deemed filed, pursuant to Section 1111(a) of the Code, by virtue of such Claim having been scheduled in the lists of Creditors prepared and filed by the Debtors with the Bankruptcy Court, pursuant to Section 521(1) and Rule 1007(b), and not listed as disputed, contingent or unliquidated; or (c) deemed an Allowed Claim (including Allowed Secured Claims and Allowed Unsecured Claims) pursuant to the provisions of the Plan or any Order of the Bankruptcy Court. Unless otherwise provided in the Plan or unless deemed or adjudicated an Allowed Claim, pursuant to the provisions of the Plan or any Order of the Bankruptcy Court, an Allowed Claim shall not include any Claim as to which an objection to or proceeding challenging the allowance thereof has been interposed, within any applicable period of limitation fixed pursuant to the Plan, by Rule 3003, or any Order of the Bankruptcy Court until such objection or proceeding has been overruled, dismissed, or settled by entry of a Final Order. Notwithstanding the filing of any such objection, or the commencement of any such proceeding, a Claim may be temporarily allowed for voting purposes, pursuant to the provisions of Rule 3018(a). Unless otherwise specified in the Plan or any Order of the Bankruptcy Court, an

Allowed Claim shall not include or accrue interest on the amount of such Claim maturing, incurred otherwise, or arising subsequent to the Petition Date.

**Allowed Priority Tax Claim** shall mean a Priority Claim, pursuant to Code Section 507(a)(8), to the extent such Priority Claim is or becomes an Allowed Claim.

**Allowed Secured Claim** shall mean a Secured Claim to the extent provided under Section 506 of the Bankruptcy Code and to the extent that neither the Lien underlying the Claim is challenged nor the amount of the Claim is challenged as provided for herein.

**Allowed Unsecured Claim** shall mean an Unsecured Claim to the extent such Unsecured Claim is or becomes an Allowed Claim.

**Ballot** shall mean the form(s) distributed to each Creditor holding a Claim in an impaired Class, on which is to be indicated the acceptance or rejection of the Plan.

**Ballot Date** shall mean the date set by the Bankruptcy Court by which all votes for acceptance or rejection of the Plan must be received by the Bankruptcy Court or the balloting agent, as the case may be.

**Bankruptcy Case** shall mean the bankruptcy case of the Debtor, which is pending before the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division, pursuant to Chapter 11 of the Code.

**Bankruptcy Code** shall mean the United States Bankruptcy Code, 11 U.S.C. 101, *et seq.*, and any amendments thereof.

**Bankruptcy Court** shall mean the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division, in which Debtors' Bankruptcy Case is pending, and any Bankruptcy Court having jurisdiction to hear appeals or certiorari proceedings therefrom.

**Bankruptcy Estate** shall mean the estate, created pursuant to Section 541 of the Code, by the commencement of the Debtors' Bankruptcy case and shall include all property of the estate as defined in Section 541 of the Code.

**Bar Date** shall mean the date fixed by Order of the Bankruptcy Court as the last date for the filing of Claims in this Bankruptcy Case.

**BMW** shall mean BMW Financial Services.

**Business Day** shall mean a day other than a Saturday or a Sunday or any other day on which the majority of commercial banks located in Jacksonville, Florida are required or authorized to close.

**Cash** shall mean cash or cash equivalents, including but not limited to, checks, bank deposits, or other similar items.

**Causes of Action** shall mean the following actions and causes of action (and the proceeds thereof), whether or not commenced as of the date hereof, all proceedings, commenced or to be commenced pursuant to Bankruptcy Code Sections 105 and 502 and Sections 544-554 (or equivalent provisions of applicable non-bankruptcy laws).

**Claim** shall mean any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or any right to an equitable remedy for breach of performance, if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

**Class** shall mean any Class into which Claims or Interests are classified pursuant to the Plan.

**Class 1 Claim, Class 2 Claim, Class 3 Claim**, *etc.*, shall mean the specific Class into which Claims or Interest are classified pursuant to Article II of the Plan.

**Code** shall mean the United States Bankruptcy Code. 11 U.S.C. 101, *et seq.*, and any amendments thereof.

**Confirmation** shall mean the process leading to and including the entry of the Confirmation Order, pursuant to Section 1129 of the Code.

**Confirmation Date** shall mean the date of entry of the Confirmation Order by the Bankruptcy Court.

**Confirmation Order** shall mean the Order entered by the Bankruptcy Court confirming the Plan in accordance with the provisions of the Code and which is in form and content acceptable to the Debtors.

**Contributed Funds** shall mean the sum of $200,000 to be contributed by the Released Parties in consideration for the Releases.

**Creditor** shall have the same meaning as set forth in Section 101(1) of the Code.

**Debt** shall have the same meaning as set forth in Section 101(12) of the Code.

**Debtors** shall mean Richard Haisfield and Audrey L. Haisfield.

**Disclosure Statement** shall mean the Disclosure Statement approved for distribution by the Bankruptcy Court, pursuant to Section 1125 of the Code, together with any amendments or modifications thereto.

**Disputed Claim** shall mean a Claim against the Debtors which is not an Allowed Claim and which has not been disallowed by a Final Order of the Bankruptcy Court.

**Disputed Unsecured Claim** shall mean any Unsecured Claim, which is not an Allowed Unsecured Claim.

**Distribution** shall mean the Distribution to the Holders of Allowed Claims.

**Effective Date** shall mean a date within thirty (30) days after the Bankruptcy Court has entered the Confirmation Order and provided that no appeal of the Confirmation Order is pending; *provided, however,* that the Effective Date shall not occur until all the preconditions to the occurrence of the Effective Date set forth in the Plan have been met. In the event that an appeal of the Confirmation Order is pending, the Effective Date may still occur on the 30th day after the entry of the Confirmation Order provided that the notice has been filed and the Debtors stipulate in writing that the Effective Date shall occur on such date.

**Estate Assets** shall mean all the assets, property and cash of the Debtors, as defined in section 541 of the Code (excluding assets previously distributed, expended or otherwise disposed of by the Debtors prior to the Confirmation Date not otherwise subject to recovery), wherever located or of whatever type or nature, existing as of the Confirmation Date.

**Final Order** shall mean an Order or judgment of the Bankruptcy Court, which is no longer subject to appeal or certiorari proceedings and as to which no appeal or certiorari proceeding is pending or, in the discretion of the Debtors, if an appeal is filed and no stay has been entered.

**Guaranteed Payment** shall mean the total payment of $150,000 to be paid by the Haisfields from the Contributed Funds on the Effective Date and distributed pro rata to Holders of Allowed Class 4 Claims as provided for in the Plan.

**Holder** shall mean the legal or beneficial Holder of a Claim or Interest and, when used in conjunction with a class or type of Claim or Interest, means a Holder of a Claim or Interest in such Class or of such type.

**Impaired Class** shall mean any Class whose members are Holders of Claims or Interests, which are impaired within the meaning of Section 1124 of the Code.

**Insider** shall have the same meaning as set forth in Section 101(31) of the Code.

**Lien** shall mean any mortgage, lien, charge, security interest, encumbrance, or other security device of any kind affecting any asset or property of the Debtors but only to the extent that such interest is recognized as valid by a court of competent jurisdiction if the validity or scope of such interest is challenged by the Debtors, or any other party with standing to bring such a challenge.

**Nonordinary Course Administrative Claim** shall mean an Administrative Claim other than an Ordinary Course Administrative Claim.

**Order** shall mean a determination, decree, adjudication, or judgment issued or entered by the Bankruptcy Court.

**Ordinary Course Administrative Claim** shall mean an Administrative Claim incurred post-petition in the ordinary course of business of the Debtors; provided, however, that any due and unpaid post-petition payment with respect to rejected, or to be rejected, executory contracts or unexpired leases shall not be an Ordinary Course Administrative Claim.

**Payment** shall mean the Cash to be paid under the Plan to the Holders of Allowed Claims.

**Person** shall mean an individual, corporation, partnership, joint venture, trust, estate, unincorporated organization, or a government or any agency or political subdivision thereof.

**Petition Date** shall mean December 2, 2011, the date on which Debtors filed a voluntary petition for relief under Chapter 11 of the Code.

**Plan** shall mean this Chapter 11 Plan of Reorganization, as amended or modified in accordance with the terms hereof or in accordance with the Code.

**Plan Payments** shall mean payments made by the Debtors pursuant to the terms of the Plan including the payment of Nonordinary Course Administrative Claims.

**Prepetition** shall mean the period of time preceding the Petition Date and concluding on the Petition Date.

**Priority Claim** shall mean a Claim, other than an Administrative Claim, to the extent such Claim is entitled to priority in payment under Section 507 of the Code.

**Professional** shall mean: (i) any professional retained in the Bankruptcy Case pursuant to an order of the Bankruptcy Court in accordance with Section 327 or 1103 of the Bankruptcy Code; (ii) any attorney or accountant seeking compensation or reimbursement of expenses pursuant to Section 503(b) of the Bankruptcy Code; and (iii) any entity whose fees and expenses are subject to approval by the Bankruptcy Court as reasonable, pursuant to Section 1129(a)(4) of the Bankruptcy Code.

**Property** shall have the same meaning as the term "property of the estate" delineated in Section 541 of the Code.

**Pro Rata Share** means as to any Allowed Class 4 Claims as of the Effective Date (including any portion of Class 1 through 3 Claims which are treated as Class 4 Claims) or such later date on which such Claim becomes Allowed, a fraction of: (i) the numerator of which is the amount of such Allowed Claim: and (ii) the denominator of which is the sum of (x) all Allowed Class 4 Claims (including any portion of Class 1 through 3 Claims which are treated as Class 4 Claims) as of such date plus (y) all Disputed Class 4 Claims (including any portion of Class 1 through 3 Claims which are treated as Class 4 Claims) as of such date.

8

**Released Parties** shall mean Marc Haisfield, Randy Haisfield, Lisa Haisfield Wilkenson, Michael Haisfield and Tracy Eggleston, along with their respective business entities and affiliates.

**Rule** or **Rules** shall mean the Federal Rules of Bankruptcy Procedure as supplemented by the Local Bankruptcy Rules as adopted by the Bankruptcy Court.

**Secured Claim** shall mean a Claim secured by a Lien which is perfected and enforceable under applicable law, and which is not subject to avoidance under the Code or other applicable non-bankruptcy laws. A Secured Claim which is challenged by the Debtors shall only be an Allowed Secured Claim to the extent that such Claim is deemed to be an Allowed Secured Claim in the Plan or the underlying Security Interest is recognized as valid by the Bankruptcy Court and the difference in amount between such a Creditor's Allowed Claim and its Allowed Secured Claim shall be an Allowed Unsecured Claim.

**Security Interest** shall mean "security interest" as defined in 11 U.S.C. §101 (51).

**Tax Claim** shall mean an unsecured Claim for taxes entitled to priority under Section 507(a)(8) of the Code.

**Tax Collector** shall mean the Marion County Tax Collector.

**Unclaimed Property** shall mean any cash, or any other Property of the Debtors unclaimed for a period of six (6) months after any Distribution.

**Unimpaired Class** shall mean any Class the members of which are the Holders of Claims or Interests, which are not impaired within the meaning of Section 1124 of the Code.

**Unsecured Claim** shall mean a Claim that arose or is deemed to have arisen prior to the Petition Date and is not a Secured Claim or an Administrative Claim.

**Unsecured Creditor** shall mean a creditor holding an Allowed Unsecured Claim.

**United States Trustee** shall have the same meaning ascribed to it in 28 U.S.C. § 581, *et seq.* and, as used in the Plan, refers to the office of the United States Trustee for Region 21 located in the Middle District of Florida, Orlando, Florida.

**Wagon** shall mean Richard Haisfield' s 2009 BMW X3 Wagon.

## ARTICLE II. - CLASSIFICATION OF CLAIMS AND INTERESTS.

All Claims and Interests treated under Articles III-VIII of the Plan are divided into the following classes, which shall be mutually exclusive:

A.    <u>Class 1 — BMW Financial Services</u>.

Class 1 consists of the Allowed Secured Claim of BMW Financial Services which arises from a pre-petition purchase money loan for the purchase of the Wagon.  The Class 1 Claim is secured by a purchase-money, first priority lien on the Wagon.

B.    <u>Class 2 – Team Valor International</u>.

Class 2 consists of the Allowed Secured Claim of Team Valor International which arises from a pre-petition purchase money loan in the original principal amount of $62,500.  The Class 2  Claim is secured by a purchase money lien in the stallion named Causeway's Kin.

C.    <u>Class 3 – The Greatness Syndicate</u>.

Class 3 consists of the Allowed Secured Claim of The Greatness Syndicate which arises from a pre-petition purchase money loan in the original principal amount of $62,500.  The Class 3 Claim is secured by a purchase money lien in the stallion named Greatness.

D.    <u>Class 4 – General Unsecured Claims</u>.

Class 4 consists of the Allowed Claims of Unsecured Creditors.

E.    <u>Class 5 – Interests</u>.

Class 5 consists of the ownership interests of the Haisfields.

## ARTICLE III. - ADMINISTRATIVE EXPENSES.

    A.        Administrative Claims.

        1.        Nonordinary Course Administrative Claims.

Any person, including any professional who has rendered services to Debtors during the course of the Bankruptcy Case, that asserts an Administrative Claim arising before the Confirmation Date, including Claims under Section 503(b) of the Code, but excluding Ordinary Course Administrative Claims as discussed below, shall, on or before the Administrative Claims Bar Date or other date as set by Bankruptcy Court order, file an application, motion, or request, as called for by the Rules, with the Bankruptcy Court for allowance of such Claim as an Administrative Claim specifying the amount of and basis for such Claim; *provided, however,* that applicants or movants who have previously filed applications, motions, or requests with the Bankruptcy Court need not file another such paper for the same Claim. Failure to file a timely application, motion, or request for allowance pursuant to this Section by any Holder of a Nonordinary Course Administrative Expense Claim, other than such a Holder engaged or employed by the Debtors shall bar such a claimant from seeking recovery on such Claim.

Each Holder of a Nonordinary Course Administrative Claim of the Debtors shall be paid by the Debtors one hundred percent (100%) of its Allowed Claim in Cash, unless otherwise ordered by the Bankruptcy Court or agreed to by such Holder, on or before the Effective Date or such later date as may be agreed to by such Holder, or, if the Claim does not become Allowed prior to the Effective Date, on the date the Allowed Amount of such Claim is determined by Final Order of the Bankruptcy Court. As provided for in Article VII of the Plan, a portion of the Contributed Funds along with the Debtors' cash on hand as of the Effective Date

11

shall be first used to pay Nonordinary Course Administrative Claims. However, nothing in this provision of the Plan shall preclude the Debtors from paying any Holder of a Nonordinary Course Administrative Claim less than one hundred percent (100%) of its Allowed Claim in Cash on the Effective Date provided that such Claim Holder consents to different payment terms.

2.    Ordinary Course Administrative Claims.

Ordinary Course Administrative Claims will be resolved through the performance of the obligation by the Debtors in accordance with the terms and conditions of the agreement or applicable law giving rise thereto. An applicant for such Claim need not file an application, motion, or request to protect its rights with respect to Ordinary Course Administrative Claims.

B.    Tax Claims.

Except to the extent that the Holder and Debtors have agreed or may agree to a different treatment, each Holder of an Allowed Priority Tax Claim shall receive from the Debtors, in full satisfaction of such Claim, payments equal to the Allowed Amount of such Claim. Allowed Priority Tax Claims will be paid over a period of five (5) years from the Petition Date with interest at five percent (5%) per annum; the payments will be made quarterly. Payments will commence on the later of the Effective Date, or on such date as a respective Priority Tax Claim becomes Allowed. To the extent a Holder of an Allowed Priority Tax Claim holds lien rights, such Holder will retain those rights, but may not enforce such rights if the Debtors are making payments to such Holder in accordance with the Plan.

## ARTICLE IV. - TREATMENT OF UNIMPAIRED CLASSES.

The only Class of Claims and Interests which is Unimpaired is Class 5. The Treatment for this Class is as follows:

A.  Class 5 - Interests.

Class 5 consists of the ownership interests of Richard Haisfield and Audrey L. Haisfield. The Debtors will retain their ownership interest in property of the estate.

## ARTICLE V. - TREATMENT OF IMPAIRED CLASSES OF CLAIMS.

A.  Determination of Allowed Amounts.

Treatment prescribed for Claims and Interests in the following sections of this Article V shall in all events refer exclusively to the Allowed Amount of each respective Claim. In the event the Allowed Amount of any Claim is not determined by agreement or otherwise prior to the Effective Date, then the treatment prescribed shall be deemed effective as of the date of the determination of such Claim by agreement or Final Order or as otherwise provided under the Plan. Notwithstanding Confirmation of the Plan, the Debtors reserve the right to object to any Claim (other than Claims deemed in the Plan to be Allowed Claims) for any reason authorized by applicable bankruptcy and nonbankruptcy law as well as the right to assert that any such Claim includes amounts subject to equitable subordination or other equitable relief.

B.  Class 1 — BMW Financial Services.

Class 1 consists of the Allowed Secured Claim of BMW which arises from a pre-petition purchase money loan for the purchase of a 2009 BMW X3 Wagon (the "Wagon"). The Class 1 Claim is estimated in the amount of $23,964.59 and is secured by a purchase money, first priority lien on the Wagon. In full satisfaction of BMW's Allowed Secured Claim, BMW shall

retain its lien on the Wagon and on the first day of the month following the Effective Date, the Debtors shall commence monthly payments to BMW on account of the Allowed Class 1 Claim based upon a three (3) year amortization and maturity with interest at a fixed rate of five percent (5%).  The Debtors may prepay the entire Allowed Class 1 Secured Claim at any time without penalty.

        C.       <u>Class 2 — Team Valor International</u>.

        Class 2 consists of the Allowed Secured Claim of Team Valor International which arises from a prepetition purchase money loan in the original principal amount of $62,500 and is secured by a first priority lien in the stallion prospect Causeway's Kin.  The Class 2 Secured Claim is estimated in the amount of $62,500.  Team Valor International will retain its lien on Causeway's Kin and an on the first day of the month following the Effective Date Team Valor International will commence accruing interest at a rate of five percent (5%) on the Allowed Class 2 Claim.  On the one year anniversary of the Effective Date, the Debtors will commence monthly payments on the total outstanding balance owed (Allowed Secured Claim plus accrued interest) based upon a three year amortization and maturity with interest at five percent (5%).

        F.       <u>Class 3 – The Greatness Syndicate</u>.

        Class 3 consists of the Allowed Secured Claim of The Greatness Syndicate which arises from a prepetition purchase money loan in the original principal amount of $62,500 and is secured by a first priority lien in the stallion prospect Greatness.  The Class 3 Secured Claim is estimated in the amount of $62,500.  The Greatness Syndicate will retain its lien on Greatness and an on the first day of the month following the Effective Date The Greatness Syndicate will commence accruing interest at a rate of five percent (5%) on the Allowed Class 3 Claim.  On the one year anniversary of the Effective Date, the Debtors will commence monthly payments on the

total outstanding balance owed (Allowed Secured Claim plus accrued interest) based upon a three year amortization and maturity with interest at five percent (5%).

      G.     <u>Class 4 –General Unsecured Claims</u>.

Class 4 consists of the Allowed Claims of Unsecured Creditors. Each Holder of an Allowed Class 4 Unsecured Claim shall be entitled to a pro rata share of the Guaranteed Payment on the Effective Date and a pro rata share of the Annual Dividend commencing on December 31, 2013 and continuing each year thereafter for three years.

## ARTICLE VI. - UNEXPIRED LEASES AND EXECUTORY CONTRACTS.

To the extent the Debtors reject any executory contract or unexpired lease prior to the Confirmation Date, any party asserting a Claim, pursuant to Section 365 of the Code, arising from the rejection of an executory contract or lease shall file a proof of such Claim within thirty (30) days after the entry of an Order rejecting such contract or lease, and any Allowed Claim resulting from rejection shall be a Class 4 Claim except as otherwise provided herein. The Debtors shall have through and including the hearing on Confirmation within which to assume or reject any unexpired lease or executory contract; and, further, that in the event any such unexpired lease or executory contract is not assumed (or subject to a pending motion to assume) by such date, then such unexpired lease or executory contract shall be deemed rejected as of the Confirmation Date.

## ARTICLE VII. - MEANS OF IMPLEMENTATION.

      A.     <u>Contributed Funds/Guaranteed Payment</u>.

Prior to the Effective Date, the Released Parties shall collectively contribute the Contributed Funds in the total amount of $200,000 to the Debtors' estate in exchange for a release of any and all claims of the estate and parties-in-interest. The Haisfields will use $150,000 of the Contributed Funds to pay the Guaranteed Payment of $150,000 which will be

paid on a pro rata basis to Holders of Allowed Class 4 Claims.  It is anticipated that the remaining $50,000 will be used to pay any outstanding administrative and priority claims.

      B.    <u>Annual Dividend</u>.

      Commencing on December 31, 2013, the Debtors will make a pro rata distribution to Holders of Allowed Class 4 Claims from one half of the net profits received by the Debtors during that calendar year from stud fees from Greatness and Causeway's Kin as well as any funds received from the mares named "Whitepark Bay," "La Mona Lisa" and their respective foals with the stallion named "Greatness."

      C.    <u>Funds Generated During Chapter 11</u>.

      Funds generated from stud fees of Greatness and Causeway's Kin along with any other amounts earned by the Debtors through the Effective Date will be used for household expenses and Plan Payments.  The Debtors believe that cash flow from stud fees related to Causeway's Kin and Greatness along with the Contributed Funds will be sufficient to meet all required Plan Payments.

      D.    <u>Additional Provisions</u>.

      1.    <u>Procedures For Resolving Disputed Claims</u>.

      a.    <u>Prosecution of Objections to Claims</u>.

      Pursuant to the Plan, unless another time is set by order of the Bankruptcy Court, all objections to Claims and Equity Interests shall be Filed with the Court and served upon the Holders of each of the Claims and Equity Interests to which objections are made within 90 days after the Effective Date.

      Except as may be specifically set forth in the Plan, nothing in the Plan, the Disclosure Statement, the Confirmation Order or any order in aid of Confirmation, shall

constitute, or be deemed to constitute, a waiver or release of any Claim. Cause of Action, right of setoff, or other legal or equitable defense that, the Debtors had immediately prior to the commencement of the Bankruptcy Case, against or with respect to any Claim or Equity Interest. Except as set forth in the Plan, upon Confirmation, the Debtors shall have, retain, reserve and be entitled to assert all such Claims, Causes of Action, rights of setoff and other legal or equitable defenses that the Debtors had immediately prior to the commencement of the Bankruptcy Case as if the Bankruptcy Case had not been commenced.

   b. <u>Estimation of Claims</u>.

     Pursuant to the Plan, the Debtors may, at any time, request that the Bankruptcy Court estimate any contingent, disputed, or unliquidated Claim, pursuant to Section 502(c) of the Bankruptcy Code, regardless of whether the Debtors have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, disputed, or unliquidated Claim, that estimated amount will constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtors may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.

   c. <u>Cumulative Remedies</u>.

     In accordance with the Plan, all of the aforementioned Claims objection, estimation, and resolution procedures are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or

resolved by any mechanism approved by the Bankruptcy Court. Until such time as an Administrative Claim, Claim, or Equity Interest becomes or is otherwise deemed in this Plan to be an Allowed Claim, such Claim shall be treated as a Disputed Administrative Claim, Disputed Claim, or Disputed Equity Interest for purposes related to allocations, Distributions, and voting under the Plan.

     d.  <u>Controversy Concerning Impairment</u>.

      If a controversy arises as to whether any Claims or Equity Interests or any Class of Claims or Equity Interests are Impaired under the Plan, the Bankruptcy Court, after notice and a hearing. shall determine such controversy before the Confirmation Date. If such controversy is not resolved prior to the Effective Date, the Debtors' interpretation of the Plan shall govern.

## ARTICLE VIII. — MISCELLANEOUS.

  A.  <u>Effects of Confirmation</u>.

    1.  <u>Amendments to the Plan</u>.

      The Debtors reserve all rights to amend, alter, or withdraw this Plan before conclusion of the Confirmation Hearing and to amend, modify, or alter this Plan after the Confirmation Date, in accordance with the applicable provisions of the Code.

    2.  <u>Authority to Effectuate the Plan</u>.

      Upon the entry of the Confirmation Order by the Bankruptcy Court, the Plan provides all matters provided under the Plan will be deemed to be authorized and approved without further approval from the Bankruptcy Court. The Debtors shall be authorized, without further application to or order of the Bankruptcy Court. to take whatever action is necessary to achieve consummation and carry out the Plan in accordance with this Plan and the Code.

3.      Post-Confirmation Status Report.

Pursuant to the Plan, within 120 days of the entry of the Confirmation Order, the Debtors will file status reports with the Court explaining what progress has been made toward consummation of the confirmed Plan. The status report will be served on the United States Trustee and those parties who have requested special notice post-confirmation. The Bankruptcy Court may schedule subsequent status conferences in its discretion.

4.      Retention of Professionals.

After the Effective Date, the Debtors may retain professionals on such terms, as the Debtors deem reasonable without Bankruptcy Court approval. Persons who served as professionals to the Debtors prior to the Effective Date may also continue to serve the Debtors.

B.      Conditions to Effectiveness.

The Effective Date shall not occur until all of the following conditions have been satisfied:

1.      The entry of the Confirmation Order by the Bankruptcy Court in form and content acceptable to the Debtors and expiration of the appeal period with respect to the Confirmation Order without the filing of a notice of appeal of such Order; *provided, however,* that, if an appeal of the Confirmation Order is filed but no stay is granted in connection with the appeal, the Debtors may in writing elect to permit the Effective Date to occur notwithstanding the pendency of the appeal.

2.      Inclusion in the Confirmation Order of an injunctive provision staying, restraining, and enjoining all individuals or entities, except as set forth in Article V. from

commencing, enforcing, perfecting, or setting off any Claim, judgment, or Interest against the Debtors, or any property thereof, or against any of the Debtors' transferees for the purposes of, directly or indirectly, collecting, recovering, or receiving payment of, on, or with respect to, any Claim or Equity Interest; provided, that such injunctive provision shall not prevent any governmental unit from enforcing such governmental unit's police or regulatory power.

3.    All ancillary documents necessary to implement and confirm the Plan have been approved by the Debtors unless the Debtors have waived this requirement in writing.

4.    Upon the satisfaction or waiver of each of the foregoing conditions, the Debtors shall so notify the Bankruptcy Court, and upon the filing of such notice the Plan shall become Effective without further Order of the Bankruptcy Court provided that all of the conditions to effectiveness of the Plan set forth herein, including those set forth below, have been met.

C.    <u>Discharge and Injunction.</u>

1.    <u>Discharge.</u>

To the fullest extent permitted by applicable law, and except as otherwise provided in the Plan, the operative documents implementing the Plan, or the Confirmation Order: (a) upon the completion of all payments required under the Plan or grant of early discharge by the Court, the Confirmation Order shall operate as a discharge under 11 U.S.C. §1141(d)(1) of the Bankruptcy Code, and as a release of any and all Claims, Debts, Liens, Security Interests, and encumbrances of and against the Debtors and all Property that arose before Confirmation, including without limitation, any Claim of a kind specified in §§ 502(g), 502(h), or 502(i) of the Bankruptcy Code, and all principal and interest, whether accrued before, on, or after the Petition Date, regardless of whether (i) a Proof of Claim has been filed or deemed filed, (ii) such Claim

has been Allowed pursuant to §502 of the Bankruptcy Code, or (iii) the Holder of such Claim has voted on the Plan or has voted to reject the Plan; and (b) from and after the completion of all payments required under the Plan (i) all Holders of Claims shall be barred and enjoined from asserting against the Debtors and its property any Claims, Debts, Liens, Security Interests, and encumbrances of and against all Property of the Estate, and (iii) the Debtors shall be fully and finally discharged of any liability or obligation on a Disallowed Claim or an Interest. Except as otherwise specifically provided herein, nothing in the Plan shall be deemed to waive, limit, or restrict in any manner the discharge granted upon Confirmation of the Plan pursuant to § 1141 of the Bankruptcy Code.

2.      Stay/Injunction.

As part of the Confirmation Order, the Bankruptcy Court shall stay and prohibit all Holders of Claims, Liens, Security Interests, Liens, encumbrances rights and Interest in, to or against the Debtors or any of their assets from asserting, prosecuting or collecting such Claims, Liens, Security Interests (other than Liens or Security Interests expressly continued pursuant to the terms of the Plan or the operative documents between the Debtors and the Holder of a Claim regarding the treatment of the Claim under the Plan), encumbrances, rights and Interests against the Debtors; provided, however, that such stay shall not apply to any Claim asserted against the Debtors by a claimant based upon a default by the Debtors in performance of its obligations to the claimant under the Plan. Upon completion of payments required under the Plan or grant of early discharge, the Bankruptcy Court shall permanently enjoin and prohibit all Holders of Claims, Liens, Security Interests, Liens, encumbrances rights and Interest in, to or against the Debtors or any of their assets from asserting, prosecuting or collecting such Claims, Liens, Security Interests (other than Liens or Security Interests expressly continued pursuant to

the terms of the Plan or the operative documents between the Debtors and the Holder of a Claim regarding the treatment of the Claim under the Plan), encumbrances, rights and Interests against the Debtors; provided, however, that such stay shall not apply to any Claim asserted against the Debtors by a claimant based upon a default by the Debtors in performance of its obligations to the claimant under the Plan.

        D.      <u>Releases/Injunctions</u>.

        The Plan is premised upon the releases contained below.  The Debtors assert the releases are being given in consideration for the Contributed Funds and the Distributions to be made to Holders of Allowed Claims under the Plan.  The Contributed Funds are essential to confirmation of the Plan and allow Holders of Allowed Unsecured Claims a substantial dividend with no collection costs or risks.

        While the Debtors are proposing the releases for the Contributing Parties, the Debtors do not believe there are any meritorious Claims or Causes of Action against Released Parties.

        a.      **Rule 3016(c) Declaration.**  In accordance with the requirements of Rule 3016(c), the provisions herein operate to specifically release the Released Parties from all claims related to the Debtors that arose prior to the Effective Date ("Released Claims") and enjoin certain acts in connection with such releases.  Such releases and injunctions cover the Released Parties whose contributions are so critical to the reorganization effort that without them the reorganization would fail.  From and after the Confirmation Date, the releases described herein shall become effective and the Debtors, Parties in Interest, Unsecured Creditors, and Interest Holders shall be enjoined from commencing or continuing any Released Claims against the

Released Parties.  Within this Section **bold print and italics** are used to identify the exact nature of releases and to identify the parties subject to the releases.

   b.  ___**General Releases by the Debtors and All Parties in Interest.**___

      *On the Effective Date, in consideration for the Contributed Funds and the Distributions to be made to Holders of Allowed Claims under the Plan, **the Debtors, All Parties in Interest, Unsecured Creditors and Interest Holders** will be deemed to forever release, waive, discontinue, and discharge all existing claims, obligations, proceedings, suits, judgments, damages, demands, debts, rights, causes of action under any theory, objection to Claims and liabilities, known or unknown, of any kind or nature, that are based in whole or in part on any act, failure to act, omission, transaction, or other occurrence taking place or arising on or prior to the Effective Date, solely to the extent the foregoing relates in any way to the Debtors or any entity owned or controlled by the Debtors, that **the Debtors, All Parties in Interest, Unsecured Creditors and Interest Holders** has, had, or may have against the Released Parties. Notwithstanding the foregoing, the releases provided herein shall not affect in any manner the obligations arising under the provisions of the Plan, including the right to enforce the obligations of any party arising under the Plan and the contracts, instruments, releases, agreements, and documents delivered under or in connection with the Plan.*

   c.  ___**Injunction Related to Releases.**___  *Except as expressly provided in the Plan or to otherwise enforce the terms of the Plan as of the Confirmation Date, **the Debtors and All Parties in Interest, including Unsecured Creditors and Interest Holders**, to the fullest extent permitted by applicable law, are permanently enjoined from taking any of the following actions on account of any such discharged Claims, debts, liabilities, Interests, or other rights: (i) commencing or continuing in any manner any action or proceeding against the **Released Parties***

*or their respective property, other than to enforce any right, pursuant to the Plan, to a distribution; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the* **Released Parties***; (iii) creating, perfecting, or enforcing any lien or encumbrance against the* **Released Parties***; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability, or obligation due to the* **Released Parties***; and (v) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.*

   D. <u>Retention of Jurisdiction</u>.

    After the Effective Date, the Debtors will be free to perform all functions assigned to it under the Plan without approval of the Bankruptcy Court, except as specifically set forth herein. However, the Bankruptcy Court will continue to retain jurisdiction in this Case with respect to the following matters:

    1. All objections to the allowance of Claims and Interests and the compromise of Claims;

    2. All applications for allowance of compensation and reimbursement of out-of-pocket expenses of professionals retained in the Debtors' case by Order of the Bankruptcy Court to the extent that such compensation and out-of-pocket expenses relate to services performed before the Confirmation Date; *provided, however,* that fees of professionals for services rendered after the Effective Date may be paid by the Debtors in the ordinary course of business without a Bankruptcy Court order; *provided, further, however,* in the event that an objection is made as to post-Confirmation Date requested fees or expenses, application shall be made to the Bankruptcy Court for allowance of such fees and expenses;

3.      Any adversary proceedings or contested matters brought by the Debtors, including but not limited to the Causes of Action, the proceedings then pending or thereafter brought pursuant to Sections 544, 545, 547, 548, 549, and 550 of the Code;

4.      All controversies and disputes arising under or in connection with the Plan;

5.      The enforcement and interpretation of the provisions of the Plan;

6.      To issue such orders in aid of execution and consummation of the Plan as may be necessary and appropriate;

7.      Any motion to modify the Plan in accordance with Section 1127 of the Code, or to correct any defect, cure any omission, or reconcile any inconsistency in the Plan, Disclosure Statement, or any Confirmation Order as may be necessary to carry out the purposes of the Plan;

8.      All Claims arising from the rejection of any executory contract or lease;

9.      Such other matters as may be provided for in the Code or the Plan;

10.     To protect the property of the Estate from adverse claims or interference inconsistent with the Plan; and

11.     To ensure that Distributions are accomplished, as provided herein, and to resolve any dispute concerning the right of any person to a Distribution hereunder, under applicable law, or under a contract or agreement.

E.      <u>Headings</u>.

Article, Section, and Paragraph headings used herein are for convenience only and shall not affect the interpretation or construction of any provision of this Plan.

F.      <u>Cramdown</u>.

Debtors reserve the right to seek confirmation of the Plan under Section 1129(b) of the Code.

G.      <u>Regulatory Approval and Retirement Plans</u>.

It will not be necessary for the Debtors to await any required regulatory approvals from agencies or departments of the United States to consummate the Plan. The Plan will be implemented pursuant to its provisions and the provisions of the Code.

H.      <u>Notices</u>.

All notices required or permitted to be made in accordance with the Plan shall be in writing and shall be delivered personally, by facsimile transmission, or mailed by United States Mail to the following:

<u>To Debtors:</u>

Richard Haisfield
Audrey L. Haisfield
800 SW 85th Avenue
Ocala, Florida 34481

<u>With copies to</u>:

Jimmy D. Parrish, Esquire
Baker & Hostetler, LLP
200 S. Orange Avenue
SunTrust Center, Suite 2300
Orlando, Florida 32801-3432

I.      Manner of Payment.

Any payment of Cash made under this Plan may be made either by check drawn on an account of the Debtors, by wire transfer, or by automated clearing house transfer from a domestic bank, at the option of the Debtors.

J.      Compliance with Tax Requirements.

In connection with this Plan, to the extent applicable, the Debtors in making distributions under this Plan shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit and all Distributions, pursuant to this Plan, shall be subject to such withholding and reporting requirements. The Debtors may withhold the entire Distribution due to any Holder of an Allowed Claim until such time as such Holder provides to the Debtors, the necessary information to comply with any withholding requirements of any governmental unit. Any property so withheld will then be paid by the Debtors to the appropriate authority. If the Holder of an Allowed Claim fails to provide to the Debtors the information necessary to comply with any withholding requirements of any governmental unit within six (6) months after the date of first notification by the Debtors to the Holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then the Holder's distribution shall be treated as an undeliverable distribution in accordance with the below. The payment of all taxes on all Distributions shall be the sole responsibility of the distributee.

K.      Transmittal of Distributions to Parties Entitled Thereto.

All distributions by check shall be deemed made at the time such check is duly deposited in the United States mail postage prepaid. All distributions by wire transfer shall be

deemed made as of the date the Federal Reserve or other wire transfer is made. Except as otherwise agreed with the Holder of an Allowed Claim or as provided in this Plan, any property to be distributed on account of an Allowed Claim shall be distributed by mail upon compliance by the Holder with the provisions of this Plan to: (i) its address set forth in its Proof of Claim; (ii) the latest mailing address filed for the Holder of an Allowed Claim entitled to a distribution; (iii) the latest mailing address filed for a Holder of a filed power of attorney designated by the Holder of such Allowed Claim to receive distributions; (iv) the latest mailing address filed for the Holder's transferee as identified in a filed notice served on the Debtors pursuant to Bankruptcy Rule 3001(e); or (iv) if no such mailing address has been filed, the mailing address reflected on the Schedules or in the Debtors' books and records.

L. Distribution of Unclaimed Property.

Except as otherwise provided in this Plan, any property (Cash or otherwise) to be distributed under this Plan, which is unclaimed after six months following the relevant distribution date shall be forfeited and such distribution together with all interest earned thereon shall become an Asset of the Debtors.

M. Fractional Cents; Multiple Distributions.

Notwithstanding any other provisions of this Plan to the contrary, no payment of fractional cents will be made under this Plan. Cash will be issued to Holders entitled to receive a Distribution of Cash in whole cents (rounded to the nearest whole cent). To the extent that cash remains undistributed as a result of rounding of such fractions, such cash shall be treated as Unclaimed Property under the Plan.

N.    <u>Revocation and Withdrawal of this Plan</u>.

The Debtors reserve the right to withdraw this Plan at any time before entry of the Confirmation Order. If (i) the Debtors revoke and withdraw this Plan, (ii) the Confirmation Order is not entered, (iii) the Effective Date does not occur, (iv) the Plan is not substantially consummated, or (v) the Confirmation Order is reversed or revoked, then this Plan shall be deemed null and void.

O.    <u>Modification of Plan</u>.

The Debtors may amend or modify this Plan in accordance with §1127(b) of the Bankruptcy Code, or remedy a defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.

**RESPECTFULLY SUBMITTED** this <u>14th</u> day of June, 2012.

<div style="margin-left:40%">

COUNSEL FOR
RICHARD HAISFIELD and
AUDREY L. HAISFIELD

/s/ Jimmy D. Parrish
Jimmy D. Parrish, Esquire
Florida Bar No. 0526401
BAKER & HOSTETLER, LLP
200 S. Orange Avenue
SunTrust Center, Suite 2300
Orlando, Florida 32801-3432
Telephone: (407) 649-4000
Facsimile: (407) 841-0168
Attorneys for the Debtors

</div>

601043915.2